## S93A0362. BRUCE v. THE STATE.

(430 SE2d 745)

FLETCHER, Justice.

Johnny Eugene Bruce was convicted of murder and numerous other offenses arising out of the death of Donald W. Ivey.[1] He was sentenced to life imprisonment for the murder conviction and to multiple terms of years for other offenses. Bruce appeals and we affirm.

The evidence showed that Ivey was known to keep large sums of cash in his home. Bruce was in financial trouble and mentioned to one of his employees, Randall Pettyjohn, the possibility of burglarizing Ivey's home. Pettyjohn introduced Bruce to Jack Adams, indicating that Adams could assist in the burglary. The three discussed the matter for several months and, on August 20, 1990, Bruce drove Pettyjohn and Adams to a field near Ivey's house where Pettyjohn and Adams were to conduct a surveillance of the house, then walk to a nearby convenience store and call Bruce to come and get them. Before leaving, Bruce gave them a pair of binoculars, a leg of pantyhose each, and gave Adams a gun and two clips of ammunition.

After several hours of observation, Pettyjohn and Adams saw Ivey leave and decided to go ahead and enter the house. They did so with the pantyhose over their faces and discovered that although Ivey had left, his girl friend was still in the house. Ivey's girl friend was ordered to sit on the sofa in the living room. When Ivey returned and called out to his girl friend, Pettyjohn placed a knife to her throat. Ivey entered the living room with a gun and shot Adams twice. As Adams fell to the floor, he shot Ivey and Pettyjohn fled the scene. Adams and Ivey both died of their wounds.

1. Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Bruce contends that the trial court erred when it allowed the state to introduce statements made by him while in police custody. The trial court found that: during a custodial interrogation, after having received warnings pursuant to *Miranda v. Arizona,* 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), Bruce twice requested counsel; on each occasion, the law enforcement officers involved ceased their interrogation; and, on each occasion, Bruce changed his mind and reinitiated the interrogation. Based on these facts, the trial court found

---

[1] The crimes were committed beginning in May of 1990 and ending on August 20, 1990. Appellant was indicted during the February 1991 term of the Dawson County Grand Jury and was tried from February 10 to 20, 1992. He was sentenced on February 27, 1992 and filed a motion for new trial on March 23, 1992. The motion for new trial was denied on September 24, 1992 and a notice of appeal was filed on October 14, 1992. The case was docketed in this court on December 7, 1992 and was orally argued on February 9, 1993.

that Bruce knowingly and intelligently waived his right to counsel. That finding is supported by the evidence and is not clearly erroneous.

3. Bruce asserts that the trial court erred by refusing to grant a mistrial following the state's questions to the arresting officer concerning Bruce's silence following his arrest.[2] In response to the state's argument that Bruce's right to remain silent had not yet attached because he had not yet received his warnings pursuant to *Miranda*, supra, the trial court noted that the protection against self incrimination exists, not as a result of any warnings given by a law enforcement officer, but as a result of the protection provided by the Fifth Amendment to the U. S. Constitution and Art. I, Sec. I, Par. XVI of the Georgia Constitution.

As we held in *Mallory v. State*, 261 Ga. 625 (5) (409 SE2d 839) (1991), comment upon a defendant's silence in criminal cases is far more prejudicial than probative and such comment by the state is not permitted. While refusing to declare a mistrial in the present case, the trial court did caution the district attorney concerning any further questions and comments concerning Bruce's silence and did give the jury extensive curative instructions. Due to the overwhelming evidence of Bruce's guilt, the curative instructions were sufficient in this case and the refusal to grant a mistrial was not an abuse of the trial court's discretion.

4. Bruce argues that the trial court erred by allowing the state to introduce evidence concerning a conspiracy without first presenting a prima facie case of conspiracy as is required by OCGA § 24-3-5. However, because the trial court has broad discretion with respect to the order of proof, it is not error to allow introduction of evidence concerning the declarations of Bruce's co-conspirators prior to the presentation of a prima facie case of conspiracy where that case was made out by all of the evidence. *Blalock v. State*, 250 Ga. 441, 442 (298 SE2d 477) (1983).

5. Bruce has maintained throughout the litigation of this matter that there were two separate conspiracies: one to watch the house in which he admits he was involved and one to burglarize the house in which he insists only Pettyjohn and Adams were involved. Based upon his characterization of the facts, Bruce insists that the trial court erred by allowing the introduction of evidence concerning what Bruce insists is the second conspiracy.

However, where there is evidence that two or more individuals have conspired to accomplish a common design and one or more of the conspirators has done an act which is an incidental and probable

---

[2] Appellant did not testify at trial.

consequence of the original design and which the acting conspirator(s) deems to be expedient to the accomplishment of the common design, the intent and act of the acting conspirator(s) may be imputed to the other active[3] conspirators even though the act may not have been a part of the original common design. *Roberts v. State,* 242 Ga. 634, 635 (250 SE2d 482) (1978).

In the present case, the common design was to burglarize Ivey's house. That Bruce may not have anticipated Pettyjohn and Adams committing the burglary on the day in question does not remove him from the conspiracy, nor does it relieve him from responsibility for the incidental and probable acts that his co-conspirators felt were expedient to the accomplishment of the common design. Thus, it was not error to present evidence concerning the acts of Pettyjohn and Adams that occurred after they left the field and entered Ivey's home.

6. Bruce argues that the trial court erred by refusing to order the state to provide the defense with certain exculpatory information in response to his request for such information pursuant to *Brady v. Maryland,* 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). The information Bruce characterizes as exculpatory concerns the connection between one of his co-conspirators and Ivey. Bruce maintains that such information supports his theory that his co-conspirators initiated the second conspiracy to burglarize Ivey's house after they completed the first conspiracy of watching the house. However, as we pointed out in the preceding division, there is no merit to Bruce's argument concerning two separate conspiracies. Thus, even if the state had provided Bruce with the information about which he now complains and even if that information had proved what Bruce wanted to prove, the information would not have absolved him of culpability for the acts of his co-conspirators. There was no error in this regard.

7. The indictment charged Bruce with numerous overlapping offenses and after the jury returned its verdict finding Bruce guilty of all of the crimes charged, the trial court merged several of the offenses and sentenced Bruce for, among other offenses, the malice murder and the aggravated assault of Ivey. Because the conviction for the aggravated assault of Ivey should have been merged with the conviction for the murder of Ivey, we vacate Bruce's conviction and sentence on that aggravated assault. *Montes v. State,* 262 Ga. 473 (1) (421 SE2d 710) (1992).

8. The remaining enumerations of error have no merit.

*Judgment affirmed with direction. All the Justices concur.*

---

[3] Of course the act could not be imputed to a conspirator who had withdrawn from the conspiracy pursuant to OCGA § 16-6-9.

DECIDED JUNE 21, 1993 —
RECONSIDERATION DENIED JULY 15, 1993.

*Weaver & Weaver, George W. Weaver,* for appellant.
*C. Andrew Fuller, District Attorney, William M. Brownell, Jr.,
Assistant District Attorney, Michael J. Bowers, Attorney General,
Susan V. Boleyn, Senior Assistant Attorney General, Peggy R. Katz,
Staff Attorney,* for appellee.