S10A0461. WILLIAMS v. THE STATE.
(692 SE2d 374)

THOMPSON, Justice.

Bryan Tyrone Williams was convicted of malice murder and various other crimes in connection with the shooting death of Officer Michael Stephenson of the Richmond County Board of Education Public Safety Department, while in the performance of his official duties.[1] The State sought the death penalty, but the jury fixed the

---

[1] The crimes were committed on July 16, 1997. Appellant was indicted by a Richmond County grand jury on July 21, 1997, and charged with malice murder, felony murder while in the commission of an aggravated assault, burglary, interference with government property, escape, possession of a firearm by a convicted felon, and possession of a firearm during the commission of a crime. The State served notice of its intent to seek the death penalty. Trial commenced on September 20, 1999, and on September 29, 1999, a jury found appellant guilty of all charges. At the conclusion of the sentencing phase, the jury found the existence of two statutory aggravating circumstances (OCGA § 17-10-30 (b) (8) and (10)) and recommended punishment of life without possibility of parole. Williams was sentenced on October 1, 1999 to life in prison without parole, plus a consecutive twenty-year term for burglary, five-year consecutive sentences on each of the weapons offenses and interference with government property, and twelve months for escape. The felony murder count was vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369 (5) (434 SE2d 479) (1993). Appellant filed a motion for new trial on October 19, 1999, which was amended on October 29, 2008. The amended motion for new trial was denied on January 21, 2009. Williams filed a notice of appeal which was untimely and was dismissed by this Court on June 29, 2009. Upon return to the trial court, Williams' motion for an out-of-time appeal was granted on October 20, 2009. A notice of appeal was filed October 28, 2009. The case was docketed in this Court on November 25, 2009, and

punishment at life without the possibility of parole. Williams appeals from the denial of his motion for new trial asserting that the trial court erred in denying his motion for change of venue and in finding that he received constitutionally effective assistance of trial counsel. For the reasons that follow, we affirm.

Officer Stephenson was dispatched to the Jamestown Elementary School in Augusta, Georgia, in response to a call that a burglar alarm had been activated on the premises. The school custodian, Willie Edward Brown, also responded to the alarm call and he arrived at the school accompanied by his teenage son, Marcus, just as Officer Stephenson was pulling up. Officer Stephenson encountered Williams on the school property, took a book bag from him, patted him down, and placed him in the back seat of the patrol car. Willie Brown parked his car and both he and Marcus got out to speak with the officer who stated that Williams was probably the one who had broken into the school (entry had been gained by breaking a glass panel adjacent to the cafeteria door). Both Willie and Marcus Brown observed Williams in the patrol car. At that point, Williams fired a gun through a window of the patrol car, killing Officer Stephenson. Willie and Marcus Brown observed Williams flee from the patrol car and run into the nearby woods armed with a gun. Both Browns subsequently identified Williams from a series of photographs shown to them. Williams turned himself in to the police later that night.

1. Viewed in a light most favorable to the verdict, the evidence was sufficient for a rational trier of fact to find Williams guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Williams asserts that the trial court erred in denying his motion for a change of venue as a result of extensive pretrial publicity.

> A trial court must order a change of venue in a death penalty case when a defendant can make a substantive showing of the likelihood of prejudice by reason of extensive publicity. In order to prevail on this claim, [a defendant] must show that his trial setting was inherently prejudicial as a result of pretrial publicity or that there was actual bias on the part of individual jurors. See *Gissendaner v. State*, 272 Ga. 704, 706 (2) (532 SE2d 677) (2000). When determining whether the trial setting was inherently prejudicial, courts consider the size of the community, the extent of the media coverage, and the nature of the media coverage.

submitted for decision on the briefs on January 18, 2010.

886

(Citation and punctuation omitted.) *Perkinson v. State*, 279 Ga. 232, 234 (5) (610 SE2d 533) (2005).

Williams' counsel filed a pretrial motion for change of venue which he renewed at the conclusion of the voir dire proceedings. On appeal and at trial, Williams argued that venue should have been changed due to "extensive" publicity in the Augusta area and surrounding counties. He submits that the local newspaper, the Augusta Chronicle, published thirty-eight articles and six letters to the editor concerning the case during the sixteen-month period from arrest to conviction. While "the extent and timing of the publicity are factors . . . the decisive issue is the effect of the publicity on the venireperson's ability to be objective." *Freeman v. State*, 268 Ga. 181, 184 (4) (486 SE2d 161) (1997). In this case, 65 jurors were examined and qualified. In colloquy at the conclusion of the voir dire proceedings, the court noted that it was "startling" how few prospective jurors indicated that they had formed a fixed opinion about the case; and defense counsel conceded that all jurors stated they could set aside whatever they may have read or heard about the case and any opinions they may have formed. Our review of the voir dire proceedings confirms those conclusions. Hence, Williams has not shown actual bias on the part of any individual juror. *Perkinson*, supra at 234 (5). Nor has Williams made a substantive showing of the likelihood of prejudice resulting from pretrial publicity. Id. It was not shown that the newspaper articles were inflammatory or stated inaccurate facts of the crime. See *Morrow v. State*, 272 Ga. 691 (5) (b) (532 SE2d 78) (2000); *Tolver v. State*, 269 Ga. 530 (4) (500 SE2d 563) (1998). Compare *Tyree v. State*, 262 Ga. 395 (1) (418 SE2d 16) (1992). Based on the record, we do not find that the pretrial media coverage in this case was "so extensive and inflammatory nor so reflective of an atmosphere of hostility as to require a change of venue." (Punctuation omitted.) *Perkinson*, supra at 235 (5). Accordingly, the trial court did not abuse its discretion in denying the motion to change venue. *Tolver*, supra at 533 (4).

3. At the beginning of the guilt/innocence phase of trial, Williams' attorney notified the court that the defense wished to waive the right to jury sequestration under OCGA § 15-12-142 (a). In accepting the waiver, the trial court addressed Williams directly, explaining his right to have the jury sequestered, and the consequences of sequestration and dispersal. The court also required a signed waiver from Williams which was obtained and read into the record.

> This Court has stated that [OCGA § 15-12-142 (a)] requires the jurors to be sequestered in death penalty cases. . . . [However,] the sequestration of death penalty jurors is

> not mandatory where the defendant gives his or her consent for the jury to be dispersed during trial, see, e.g., *Jones v. State*, 243 Ga. 820 (3) (256 SE2d 907) (1979).

(Citation and punctuation omitted.) *Lamar v. State*, 278 Ga. 150, 155 (12) (598 SE2d 488) (2004). See also *Mason v. State*, 239 Ga. 538 (238 SE2d 79) (1977). Where, as here, consent is given, the decision "falls squarely within the trial court's discretion." *Lewis v. State*, 279 Ga. 756, 762 (5) (620 SE2d 778) (2005).

On appeal, Williams asserts that his consent was not knowing or voluntary; however, this claim is wholly unsupported. Nor has Williams demonstrated that any harm resulted from the jury's dispersal. Accordingly, we find no abuse of the trial court's discretion in accepting the waiver and allowing dispersal. Id.

4. Williams contends that his trial counsel was constitutionally ineffective because (a) counsel failed to insist on sequestering the jury; and (b) counsel failed to file a motion to suppress the photographic identifications made by eyewitnesses Willie and Marcus Brown. In order to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), appellant "must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. [Cit.]" *White v. State*, 283 Ga. 566, 569 (4) (662 SE2d 131) (2008). We conclude appellant failed to make the requisite showings.

(a) At the hearing on the motion for new trial, counsel testified that he believed it was preferable in this case to permit the jurors to disperse and allow each person to interpret the day's evidence individually rather than combining "into a one man jury." Counsel chose this strategy after conferring with staff in the Capital Defenders program as well as with his client, because counsel thought it would give the jurors a more diverse perspective on the evidence thereby increasing the likelihood of a hung jury or an acquittal. We find this to be a reasonable tactical decision on counsel's part. Only if a tactical decision is so patently unreasonable that no competent attorney would have chosen it would there be grounds for finding deficient performance. *McKenzie v. State*, 284 Ga. 342 (4) (b) (667 SE2d 43) (2008).

(b) With regard to the photographic identifications, it was shown that Willie and Marcus Brown were placed at different tables at the police station, and were separated by a partition. Both were initially given a book of photographs and asked to look through them. During that time, investigator Lynch learned that Williams was a suspect, and upon receiving that information, he located Williams' photo-

graph in one of the books. He showed Willie Brown the open book containing 18 photographs (nine to a page), and asked him if he recognized anyone. Willie Brown immediately identified Williams' photograph. Investigator Lynch then removed the page containing Williams' photograph from the book and showed the page to Marcus Brown (each side of the page contained nine photographs). Marcus Brown independently identified Williams' photograph from the 18 shown to him.

On appeal, Williams asserts that the display was unduly suggestive because his photograph was placed in the first row, and there was a substantial likelihood of irreparable misidentification because Willie Brown gave the police conflicting statements as to his ability to observe Williams at the crime scene. "An unduly suggestive procedure is one which leads the witness to the virtually inevitable identification of the defendant as the perpetrator, and is equivalent to the authorities telling the witness, 'This is our suspect.' " (Citation and punctuation omitted.) *Humphrey v. State*, 281 Ga. 596, 597 (1) (642 SE2d 23) (2007). Where the identification procedure is not unduly suggestive, it is not necessary to consider whether there was a substantial likelihood of irreparable misidentification. *Whatley v. State*, 266 Ga. 568 (2) (468 SE2d 751) (1996).

First, we note that while counsel did not file a motion to suppress the photographic identification, our review of the record shows that counsel did object to the identification procedure on constitutional grounds during Willie Brown's direct testimony, and counsel renewed the objection when investigator Lynch similarly testified to the identification process. Nonetheless, we find nothing unduly suggestive in the photographic identification procedure employed in this case that would compel suppression of the identification evidence. *Whatley*, supra. Thus, Williams has failed to show that counsel was deficient in failing to file a motion to suppress the identification procedure, nor has he shown a reasonable probability that the outcome of the trial would have been different had counsel filed such a motion. *Strickland*, supra.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 29, 2010.

*David S. Klein*, for appellant.
*Ashley Wright, District Attorney, Charles R. Sheppard, Assistant District Attorney, Thurbert E. Baker, Attorney General, Reggie A.*

*Lampkin, Assistant Attorney General*, for appellee.