## S11A1614. ARMOUR v. THE STATE.
### (722 SE2d 751)

NAHMIAS, Justice.

Appellant Demarcus Armour challenges his convictions for malice murder and other crimes in connection with the shooting death of Bernard Glass. We affirm the judgments of conviction, but we vacate the sentence and remand for resentencing.[1]

1. The evidence at trial, viewed in the light most favorable to the

---

[1] The crimes occurred on April 3, 2007. On August 10, 2007, Appellant was indicted in Fulton County for malice murder, felony murder, aggravated assault, and possession of a firearm during a felony. On June 18, 2009, after a five-day trial along with co-defendant Damien Norris, the jury convicted Appellant of all charges. The trial court merged the aggravated assault conviction into the malice murder conviction and sentenced Appellant to

verdict, showed the following. On April 3, 2007, Appellant's brothers, Montraceus and Demetrius Sims, fought with Jeqavius and Montrez Jones at the Thomasville Heights housing project in Atlanta. Jeqavius Jones shot Demetrius Sims several times in the arm and leg with a 9mm handgun. About an hour later, Appellant and his cousin, co-defendant Damien Norris, jumped out of a van at the housing project and opened fire. Appellant was heard shouting, "I'm going to kill all you f——— n———" as he started shooting. Montrez Jones returned fire with his 9mm pistol as Appellant and Norris ran to a breezeway. Multiple witnesses saw two men running from the breezeway while still shooting. A bystander, 16-year-old Bernard Glass, was struck in the back by a .38 caliber bullet as he shielded another child; the wound was fatal. In photographic lineups, at trial, or both, five witnesses identified Appellant as one of the gunmen shooting toward Glass. Police recovered non-9mm shell casings from the breezeway. At trial, Appellant admitted being at the crime scene but denied being a shooter.

When viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979). See also *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009) (" 'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.' " (citation omitted)).

2. Appellant raises three separate challenges to the effectiveness of his trial counsel. To succeed on any of these claims, Appellant must show both that his counsel provided constitutionally deficient performance and that, but for this deficiency, there is a reasonable probability that the outcome of the trial would have been more favorable to him. See *Strickland v. Washington*, 466 U. S. 668, 687-696 (104 SC 2052, 80 LE2d 674) (1984).

(a) Appellant contends that his trial counsel was deficient in failing to seek suppression of multiple eyewitness identifications of him made during photo lineups. However, "due process concerns arise only when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Perry v. New Hampshire*, 565 U. S. ___, ___ (132 SC 716, 724, 181 LE2d 694) (2012). See also *Williams v. State*, 286 Ga. 884, 888 (692 SE2d 374)

three concurrent terms of life in prison. On June 29, 2009, Appellant filed a motion for new trial, which he amended on August 16, 2010. After a hearing on March 17, 2011, the trial court denied the motion on March 29. Appellant filed a timely appeal, and the case was docketed in this Court for the September 2011 term and submitted for decision on the briefs.

(2010) (" 'An unduly suggestive procedure is one which leads the witness to the virtually inevitable identification of the defendant as the perpetrator, and is equivalent to the authorities telling the witness, "This is our suspect." ' " (citations omitted)).

The record in this case gives no indication that the identification procedures the police used were performed improperly or in an inherently suggestive manner. See *Perry*, 565 U. S. at ___ (132 SC at 727) (discussing some improperly suggestive lineup procedures). In addition, three eyewitnesses who testified at trial knew Appellant before being shown the photo lineup and had seen him clearly during the commission of the crimes, and they therefore had an independent basis for proper identification. See *Fletcher v. State*, 277 Ga. 795, 797 (596 SE2d 132) (2004). Thus, Appellant has not shown that " 'the photographic identification procedure was so (unnecessarily) suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' " *Perry*, 565 U. S. at ___ (132 SC at 724) (citation omitted). Having failed to show that an objection to the identifications would have been successful, Appellant has failed to establish deficient performance by his trial counsel. See *Funes v. State*, 289 Ga. 793, 796 (716 SE2d 183) (2011).

(b) Appellant claims that his trial counsel was not adequately prepared for trial based on an alleged failure to properly object when the State violated the discovery statute by disclosing 47 witnesses less than ten days before trial. See OCGA § 17-16-8 (a). We addressed this issue in affirming the conviction of Appellant's co-defendant, holding that the trial court did not abuse its discretion in refusing to grant a continuance after holding an extensive pretrial hearing in which the State was required to pare down the witness list, defense counsel was given the opportunity to interview the witnesses who were allowed to testify, and other remedial steps were taken. See *Norris v. State*, 289 Ga. 154, 155-158 (709 SE2d 792) (2011). Because an objection to the late discovery would have been unsuccessful, Appellant cannot establish deficient performance. See *Funes*, 289 Ga. at 796.

Appellant also contends that his counsel should have subpoenaed Samuel Knight, whom Appellant alleges was the real shooter, to testify for the defense at trial. However, no evidence in the record shows that Knight would have agreed to testify or that his testimony actually would have been favorable to Appellant. See *Long v. State*, 287 Ga. 886, 890 (700 SE2d 399) (2010). The record evidence supports the trial court's overall conclusion that Appellant's counsel was adequately prepared for trial and that his preparation did not result in prejudice, particularly in light of the strong evidence against Appellant. See *Norris*, 289 Ga. at 158. See also *Reed v. State*, 285 Ga. 64, 66 (673 SE2d 246) (2009) ("Such after the fact disagree-

ments about trial counsel's approach to the case . . . do not amount to a showing of ineffective assistance of trial counsel.").

(c) Appellant contends that his trial counsel was ineffective in raising his bad character by eliciting, on direct examination of Appellant, an answer that mentioned his prior arrest for giving false information to the police and a "gun charge." If this evidence was not admissible by the State on cross-examination, trial counsel might have been deficient; while the State argues that Appellant's criminal history would have been admissible to impeach him under OCGA § 24-9-84.1, that rule allows impeachment only by evidence of convictions (and adjudications of delinquency), not arrests or other charges. In any event, we cannot say that the fleeting introduction of the prior charge evidence created a reasonable probability that the outcome of the trial would have been different, because the charges were never mentioned again during the trial, Appellant was impeached on other grounds, and the evidence against him was strong.

3. Appellant contends that the trial court erred by preventing him from impeaching prosecution witness Travis Morris with his first offender probation status to show the witness's bias in favor of the State. However, no evidence was ever offered or proffered to show that Morris actually was on probation at the time of trial. Moreover, Appellant failed to demonstrate any connection between Morris's purported first offender status and his motivation to give testimony favorable to the State. "Without some evidence showing the connection between [the witness's] first offender status and his desire to shade his testimony to curry favor with the State, the trial court did not abuse its discretion in prohibiting the cross-examination." *Sanders v. State*, 290 Ga. 445, 447 (2) (721 SE2d 834) (2012).

4. The jury found Appellant guilty of all the crimes charged in the indictment, including malice murder and felony murder, aggravated assault, and possession of a firearm during the commission of a felony. The trial court properly merged the aggravated assault conviction but sentenced Appellant to three terms of life in prison based on the malice murder, felony murder, and firearm convictions. Although not enumerated as error, the felony murder conviction was vacated by operation of law, see *Malcolm v. State*, 263 Ga. 369, 371-372 (434 SE2d 479) (1993), and the firearm possession sentence far exceeds the statutory maximum, see OCGA § 16-11-106 (b), (c) (providing for a term of imprisonment of five or ten years, depending on recidivism). Accordingly, Appellant's sentence must be vacated and the case remanded for resentencing, as was done in his co-defendant's case. See *Norris*, 289 Ga. at 155.

*Judgment affirmed in part and vacated in part, and case remanded for resentencing. All the Justices concur.*

*Brandon Lewis*, for appellant.

*Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Christopher M. Quinn, Assistant District Attorneys, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Clint C. Malcolm, Assistant Attorney General*, for appellee.